UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| TOMMY BLACK, | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-06-2236 |
| | § | |
| SYSCO FOODS OF HOUSTON, *et al.* | § | |
| | § | |
| *Defendants.* | § | |

**MEMORANDUM OPINION & ORDER**

Plaintiff Tommy Black brings this civil rights action against defendants Sysco Foods of Houston ("Sysco"), Teamsters Union Local 968, and Leo Correa. Plaintiff alleges that his employment was unlawfully terminated by Sysco on the basis of race and sex in violation of federal anti-discrimination law, specifically Title VII of the Civil Rights Act of 1964, as amended ("Title VII"). In a previous order, the court dismissed plaintiff's claims against defendants Local 968 and Leo Correa. *See* Dkt. 15. Sysco has filed the instant motion for summary judgment under Rule 56 and seeks the dismissal of the plaintiff's remaining claims. After considering the arguments of the parties, the summary judgment record, and the applicable law, the court finds that the defendant's motion should be GRANTED.

**I. FACTUAL AND PROCEDURAL BACKGROUND**

Before examining plaintiff's substantive claims, the court will briefly recount the facts of the case in the light most favorable to the plaintiff, as the court must on defendant's motion for summary judgment. *See Kinney v. Weaver*, 367 F.3d 337, 348 (5th Cir. 2004) (en banc). Sysco operates a food-service distribution facility in Houston, servicing numerous Harris County customers including restaurants, hotels, schools, hospitals, and retirement homes. On July 19, 1999, Sysco hired plaintiff

as a casual night warehouse selector, a part-time position that was not covered by the Teamsters' Collective Bargaining Agreement ("CBA") with Sysco. On September 14, 1999, plaintiff was involved in a heated argument with a coworker, resulting in a final warning to the plaintiff about his continued employment with Sysco. Dkt. 25, Ex. A-2.[1] Then, in October 1999, plaintiff was hired full-time as a Dry Side-Night Warehouse Selector. As a full-time employee of Sysco, plaintiff was covered by the CBA.

Plaintiff worked in this position for the following six years, but relations with his employer soured in 2005. On October 31, 2005, Sysco terminated plaintiff's employment. A series of events preceded plaintiff's termination, and the court will briefly recount them as follows. On September 27, 2005, officers from the Harris County Sheriff's Department called Sysco to determine if plaintiff was at work in order to arrest him for an aggravated assault charge. The Human Resources Department ("HR") told the officers that plaintiff was away from work at the time, and the officers asked the employee within HR to contact them as soon as plaintiff returned to work. HR agreed to notify the sheriffs when plaintiff returned. Soon thereafter, HR conducted a criminal background check on the plaintiff. The report indicated that plaintiff was wanted for a serious assault charge and that in 2004 he was convicted of assault of a family member and sentenced to jail for 25 days. He also had been convicted of unlawfully carrying a weapon in 2002. Notably, plaintiff does not dispute that he has an extensive criminal record. *See* Dkt. 25, Ex. C at 37-64.

On September 28, 2005, when plaintiff returned to Sysco, he asked to meet with operations management to request a personal leave of absence. HR contacted the Sheriff's office as requested

---

[1] At Sysco, final warnings that address any potentially abusive conduct have no expiration and remain in an employees' personnel file indefinitely. *See* Dkt. 25, Ex. B at 3.

and told them that plaintiff was on the Sysco premises. Sheriff's officers quickly arrived and arrested him. After the arrest, Sysco began evaluating plaintiff's employment status, reviewing the previous warning regarding aggressive behavior, the multiple convictions on record, his arrest for aggravated assault, and the employer's duty to provide a safe workplace.

However, before Sysco made a final determination of plaintiff's status, plaintiff returned to the HR Department on October 3, 2005. Toni Ganzenmuller, the Vice President of HR, agreed to meet with Black to discuss his status. Ms. Ganzenmuller brought plaintiff into her office and closed the door. She explained to the plaintiff that his employment status with Sysco was under review. In response, plaintiff vigorously disagreed with such action and expressed his view that Sysco erred in notifying the sheriff's office that he was on the premises the previous week so that officers could effect an arrest. Although the subsequent facts are disputed, Ganzenmuller claims that plaintiff raised his voice and exhibited aggressive body language toward her. She became very concerned and frightened by this behavior, so she called Gary Talley, the Vice President of Operations, and Ernest Hall, the Union Steward, to assist. When speaking to Talley on the telephone, Ganzenmuller stated that plaintiff was being confrontational. Indeed, as she awaited Talley and Hall's arrival, she opened the door to her office and stepped outside. After they arrived, the meeting resumed. Talley informed plaintiff that Sysco had decided to suspend his employment. Plaintiff initially refused to sign the suspension letter, but he eventually signed it "under protest." *See* Dkt. 14 at 4.

After this incident, Billy Brodnax, Assistant Vice President of Operations, reviewed the suspension and events leading up to the confrontation. Brodnax spoke with Ganzenmuller and reviewed statements from employees who claimed that they heard plaintiff screaming at Ganzenmuller during the fateful meeting. He also reviewed plaintiff's employment and criminal

3

records. Brodnax determined that because of plaintiff's recent behavior and previous misdeeds on the job, it was appropriate to terminate plaintiff's employment. He immediately notified Leo Correa, the Teamsters' Secretary/Treasurer, that Plaintiff's suspension was being withdrawn and that he was being discharged for violation of the CBA rules.

Plaintiff appealed his discharge under the procedures set forth in the CBA. A two-person committee consisting of a Teamsters' representative and a Sysco management representative held a hearing regarding plaintiff's grievance on December 12, 2005. Three days later, on December 15, 2005, the committee determined that Sysco had just cause to terminate plaintiff's employment. Sysco replaced plaintiff with Kenneth Williams, a black male, pursuant to the seniority rights of the CBA.

Plaintiff disagreed with the committee's determination and on March 30, 2006, he filed a charge of discrimination with the Texas Workforce Commission and the Equal Employment Opportunity Commission ("EEOC"). In the charge plaintiff asserted that he was terminated on the basis of race and sex by Sysco in violation of Title VII. He never mentioned Teamsters Local Union 968 or Leo Correa in his discrimination charge. On April 5, 2006, the EEOC dismissed the complaint, finding that it was unable to conclude that the information plaintiff provided established any violation of the anti-discrimination statutes. *See* Dkt. 14 at 23. The EEOC also notified plaintiff of his right to sue Sysco within ninety (90) days of the receipt of that notice. *Id.* Accordingly, on July 3, 2006, plaintiff filed suit in this court against Sysco, Correa, and Local 968, alleging Title VII violations based on discrimination because of race and sex.

On July 18, 2006, plaintiff amended his complaint to request additional monetary relief and one million dollars ($1,000,000) from each defendant, plus court costs and fees, for damages and

4

suffering attributable to the case.² Dkt. 4. On September 12, 2006, the court dismissed plaintiff's claims against defendants Correa and Local 968 for failure to exhaust his administrative remedies against them at the agency level. As a result, the only cognizable claims remaining after this dismissal are those against Sysco for Title VII violations. After the close of the discovery period, Sysco filed the instant motion for summary judgment (Dkt. 25) seeking judgment as a matter of law on these claims, and plaintiff responded to this motion. *See* Dkt. 26. It is now ripe for a decision.

## II. STANDARD OF REVIEW

Summary judgment should be granted if the record, taken as a whole, together with any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *N.Y. Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996). The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548 (1986). A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir.1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25). If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Little*, 37 F.3d at 1075.

---

² On August 16 and December 1, 2006, plaintiff filed additional supplemental and amended pleadings. These pleadings were filed after plaintiff's first amended complaint and after a responsive pleading had been served. *See* FED. R. CIV. P. 15(a). Accordingly, the court will not consider those additional claims at this time.

5

If the moving party meets this burden, however, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which there is a genuine issue for trial. *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996). The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence. *Little*, 37 F.3d at 1075; *Wallace*, 80 F.3d at 1047. Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts." *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075); *see also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir.1996). The court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts." *McCallum Highlands v. Wash. Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir.1995), *as revised on denial of reh'g*, 70 F.3d 26 (5th Cir.1995). Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S. Ct. 2505 (1986).

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.* at 248.

### III. ANALYSIS

Title VII prohibits an employer from terminating an individual's employment "because of such individual's *race*, color, religion, *sex*, or national origin." 42 U.S.C. § 2000e-2(a)(1) (emphasis added); *Griggs v. Duke Power Co.*, 401 U.S. 424, 426, 91 S. Ct. 849 (1971); *White v. N.H. Dep't of*

*Corr.*, 221 F.3d 254, 259 (1st Cir. 2000). "The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees over other employees." *Griggs*, 401 U.S. at 430. Furthermore, in addition to the Act's proscription of racial discrimination in employment decisions, Title VII's key causation phrase "because of . . . sex" protects women *and* men from unlawful discriminatory treatment. *See Newport News Shipbuilding & Dry Dock Co. v. EEOC*, 462 U.S. 669, 682, 103 S. Ct. 2622 (1983) ("[I]f a private employer were to provide complete health insurance coverage for the dependents of its female employees, and no coverage at all for the dependents of its male employees, it would violate Title VII."); *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 78, 118 S. Ct. 998 (1998). Here, plaintiff claims acts of racial and sexual discrimination. The court will address each of these claims in turn below.

### A. RACIAL DISCRIMINATION

"When plaintiff alleges disparate treatment, liability depends on whether the protected trait . . . actually motivated the employer's decision." *See Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141, 120 S. Ct. 2097 (2000). In order to help district courts make this determination, the U.S. Supreme Court has established a burden-shifting scheme for evaluating the claims at issue. *See McDonnell Douglas v. Green*, 411 U.S. 792, 802-05, 93 S. Ct. 1817 (1973); *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 n.3 (5th Cir. 2004); *see also West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 383-85 (5th Cir. 2003). The order of proof proceeds as follows: (1) the plaintiff must first demonstrate a *prima facie* case of discrimination; (2) then, if the plaintiff meets his burden, the defendant must rebut this case by producing a legitimate, nondiscriminatory reason for its actions; (3) lastly, if the defendant meets its burden, the presumption disappears, and the issue becomes

discrimination *vel non*. *See Reeves*, 530 U.S. at 142. The plaintiff can establish disparate treatment by showing that the defendant's explanation for the employment action is a pretext for discrimination. *Id.* at 143. In other words, the plaintiff can meet his burden by showing that "the employer's proffered explanation is unworthy of credence." *See Tex. Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256, 101 S. Ct. 1089 (1981). Still, the "ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.* at 253.

**1. Plaintiff's *Prima Facie* Case**

As stated above, the *McDonnell Douglas* allocation of proof first requires the plaintiff to demonstrate a *prima facie* case of discrimination. Plaintiff must prove four elements to make out a *prima facie* claim for racial discrimination: (1) that he is a member of a protected class; (2) that he was qualified for the position; (3) that he suffered an adverse employment action; and (4) that he was replaced by someone outside his protected class or that others similarly situated were treated more favorably. *See St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506, 113 S. Ct. 2742 (1993); *Okoye v. Univ. of Tex. Houston Health Science Ctr.*, 245 F.3d 507, 512-13 (5th Cir. 2001) (quoting *Shackleford v. Deloitte & Touche, LLP*, 190 F.3d 398, 404 (5th Cir. 1999)). Here, Sysco does not dispute that plaintiff has established the first three elements. Plaintiff is African-American,[3] he was

---

[3] Although not material to this case, the court notes that all racial classes, including Caucasians, are protected from racial discrimination under Title VII. *See McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 96 S. Ct. 2574 (1976) ("[The Act's] terms are not limited to discrimination against members of any particular race"). This conclusion is unsurprising given Title VII's plain language, which prevents discrimination against "*any* individual . . . because of such individual's race." 42 U.S.C. § 2000e-2(a)(1) (emphasis added). Indeed, the Supreme Court has stressed that "[d]iscriminatory preference for any group, *minority or majority*, is precisely and only what Congress has proscribed. What is required by Congress is the removal of artificial, arbitrary, and unnecessary barriers to employment when the barriers operate invidiously

qualified for the position of Dry Side-Night Warehouse Selector, and he was terminated from his employment with Sysco, an undeniably adverse employment action. Rather, the parties' dispute centers around the fourth element of plaintiff's *prima facie* case. In order to survive summary judgment, plaintiff must prove by a preponderance of the evidence either that (1) he was replaced by a non-African American worker or (2) that he was treated less favorably than similarly situated coworkers outside his protected class. *Okoye*, 245 F.3d at 512-13.

Plaintiff cannot prove the first alternative, as uncontradicted evidence in the record establishes that Sysco replaced the plaintiff with Kenneth Williams, another black male. *See* Dkt. 25, Ex. A at ¶12. With regard to the second alternative, plaintiff must show that disparate treatment was given to coworkers who were "similarly situated" with him. *Okoye*, 245 F.3d at 514. That is, they were treated differently under circumstances "nearly identical" to his. *Id.*; *Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 304-06 (5th Cir. 2000) (citing *Little Republic Refining Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991)). In essence, to raise a presumption of discrimination in this case, plaintiff must demonstrate that non-African American workers, who engaged in the same misconduct under similar circumstances, were not terminated. *Perez v. Tex. Dep't of Criminal Justice, Inst. Div.*, 395 F.3d 206, 213 (5th Cir. 2004).

Here, after a final warning and suspension, plaintiff was terminated for abusive conduct in the workplace. Plaintiff alleges that two white coworkers, Dale Langdon and Mark Duplecion, were

---

to discriminate on the basis of racial or other impermissible classification[s]." *See, e.g., Griggs*, 401 U.S. at 431 (emphasis added); *cf. United Steelworkers of Am., AFL-CIO-CLC v. Weber*, 443 U.S. 193, 200-201, 99 S. Ct. 2721 (1979). Thus, any plaintiff will be able to satisfy the first element of his or her *prima facie* case of racial discrimination as the plaintiff must be a member of at least one racial group.

engaged in similar acts of workplace violence but were not terminated. Plaintiff's claims as to each possible comparator are addressed below.

*a. Dale Langdon*

Plaintiff first claims that Dale Langdon was similarly situated with the plaintiff and was treated differently. He points to an incident involving Langdon several days after the September 11th terrorist attacks. Dkt. 25, Ex. A at ¶24. Langdon, a white male, threatened Nelson Hill, a Muslim employee, by stating that he "had a bullet with [Hill's] name on it." *Id.* Hill reported the incident, and Sysco issued a final warning to Langdon and advised him that any similar conduct in the future would result in disciplinary action up to and including termination. *Id.*

The court notes that although the plaintiff and Langdon both engaged in similar abusive conduct, the background circumstances for the similar incidents establish that Langdon is not a proper comparator. Langdon had no previous warning for threatening conduct, and he had no criminal record displaying a propensity for violent actions. By contrast, plaintiff had a previous warning in his personnel file, and he has an extensive criminal record. In short, Sysco's disparate treatment of Langdon does not raise a presumption of *unlawful* discrimination. *See Okoye*, 245 F.3d at 514.

*b. Mark Duplecion*

Plaintiff also claims that Mark Duplecion is a comparator whose favorable treatment by Sysco satisfies the fourth prong of the *prima facie* case. According to plaintiff, based on no personal knowledge of his own, Duplecion, a white Sysco employee, physically attacked another employee at the workplace in June 2004. *See* Dkt. 25, Ex. C at 253-56. To the contrary, Sysco's records indicate that Duplecion did not initiate the altercation. Dkt. 25, Ex. B at ¶23. Instead, as Duplecion

10

and an outside driver exchanged tense words in a dispute over delivered goods, the driver hit Duplecion in the chest. *Id.* Duplecion attempted to defend himself, and he did not make physical contact with his adversary. *Id.* Sysco determined that Duplecion should have handled the situation in a less confrontational manner, and it issued a final warning and suspended him for one week without pay. *Id.*

Again, like Langdon, Duplecion is not a proper comparator for a Title VII analysis. Plainly speaking, he was not similarly situated to the plaintiff because at the time of Duplecion's discipline, he did not have a final warning or previous suspension documented in his employment record and no evidence has been presented that Duplecion had a criminal record of assault. In sum, the disparate treatment of Duplecion and plaintiff proves nothing, because they were disciplined under completely differing circumstances, foreclosing any inference of invidious discrimination. *Okoye*, 245 F.3d at 514.

*c. Conclusion*

Plaintiff has offered no evidence of significant probative value to demonstrate the fourth requirement of his *prima facie* case. The two white employees that plaintiff alleges were treated more favorably were not similarly situated for the purposes of this analysis. Neither had a previous final warning and suspension on his record at the time of the disciplinary action. And neither employee had a criminal record showing a propensity for violent behavior. Plaintiff cannot demonstrate a *prima facie* case of racial discrimination, and his claim fails as a matter of law.

**2. Defendant's Legitimate, Nondiscriminatory Reason for its Action**

Even if the court determined that plaintiff did in fact demonstrate a *prima facie* case of racial discrimination, the burden of production would then shift to the defendant to offer some legitimate,

nondiscriminatory reason for terminating plaintiff's employment. This burden is not onerous. According to the Supreme Court, "[t]his burden is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142 (quoting *St. Mary's Honor Ctr.*, 509 U.S. at 509). In this case, the defendant easily meets this burden. The defendant asserts that Billy Brodnax terminated plaintiff after reviewing Black's reported conduct with Ganzenmuller and his criminal record. Dkt. 25, Ex. A at ¶10. And although plaintiff disputes Ganzenmuller's recollection of their conversation and whether he threatened her, this disagreement does not affect the legitimacy of Sysco's nondiscriminatory reason. "The question is not whether an employer made an erroneous decision; it is whether the decision was made with discriminatory motive. . . . [E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, nondiscriminatory reason. We do not try in court the validity of good faith beliefs as to an employee's competence. Motive is the issue." *See Mayberry v. Vought Aircraft Co.*, 55 F.3d 1086, 1091 (5th Cir. 1995) (alteration in orginal) (quoting *Little*, 924 F.2d at 97); *see also Sherrod v. Sears, Roebuck & Co.*, 785 F.2d 1312 (5th Cir. 1986). Therefore, despite differing accounts of the incident in question in Ganzenmuller's office, there is no evidence that Brodnax did not make a good-faith determination that plaintiff had engaged in abusive conduct that warranted his termination. Accordingly, defendant has met its burden to produce a legitimate, nondiscriminatory reason for its action.

**3. Pretext**

Lastly, at the summary judgment stage, once the defendant meets its burden of production the plaintiff must then raise a genuine issue of material fact that defendant's proffered reason is pretextual *and* that the defendant discriminated against him. *Okoye*, 245 F.3d at 513. Plaintiff claims that there was a "racist plot" to terminate his employment, and he supports this allegation with two contentions: (1) he did nothing wrong to merit termination; and (2) two non-black

employees engaged in more serious misconduct but were not terminated. *See* Dkt. 25, Ex. C at 252-53. However, as stated above, there is no evidence contradicting Sysco's claim that Brodnax had a good-faith belief that plaintiff's threatening conduct towards Ganzenmuller and his criminal record prompted Sysco's decision to terminate his employment. Also, the treatment of the white employees is irrelevant and not probative of any discriminatory animus towards plaintiff because they were not similarly situated with him. Thus, plaintiff has failed to raise a genuine issue of fact that Sysco's reasons for terminating his employment were a pretext for discrimination, and Sysco is entitled to judgment as a matter of law on plaintiff's claim of racial discrimination perpetrated in violation of Title VII.

### B. SEX DISCRIMINATION

Plaintiff also alleges that Sysco unlawfully terminated his employment because of his sex. In evaluating claims of sex discrimination, the court applies the same tripartite burden-shifting framework first announced in the racial discrimination context in *McDonnell Douglas*. *See Travis v. Bd. of Regents of the Univ. of Tex. Sys.*, 122 F.3d 259, 263 (5th Cir. 1997). He contends that, with regard to the incident in question with Ganzenmuller, she would not have been intimidated by him if he was a female. *See* Dkt. 25, Ex. C at 270-74. This is plaintiff's only evidence of any disparate treatment on the basis of sex, and it is insufficient to create a genuine issue of material fact because such suspicions do not constitute competent summary judgment evidence. *See Lawrence v. Univ. of Tex. Medical Branch at Galveston*, 163 F.3d 309, 312 (5th Cir. 1999) ("Neither 'unsubstantiated assertions' nor 'conclusory allegations' can satisfy the non-moving party's burden.") (citing *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996)). Thus, plaintiff cannot show any inference of discrimination or that Sysco's reasons for his termination were pretextual, and his claim of sex discrimination must fail as a matter of law.

## IV. Conclusion

Sysco terminated plaintiff's employment for the stated reason that he had engaged in abusive conduct and was a threat to the workplace. Plaintiff has presented no competent summary judgment evidence that Sysco's reasons were pretextual or that the motivating cause of his termination was invidious racial or sexual discrimination. Accordingly, he cannot raise a genuine issue of material fact on his remaining Title VII claims against Sysco, and that entity is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c).

For the foregoing reasons, defendant's motion for summary judgment (Dkt. 25) is GRANTED. Plaintiff's Title VII claims against Sysco are DISMISSED WITH PREJUDICE.

It is so ORDERED.

Signed at Houston, Texas on May 21, 2007.

_____
Gray H. Miller
United States District Judge